**DADE COUNTY, FLORIDA, Appellant,**

v.

**PALMER AND BAKER ENGINEERS, INC., Appellee.**

**PALMER AND BAKER ENGINEERS, INC., Appellant**

v.

**DADE COUNTY, FLORIDA, Appellee.**

No. 20144.

United States Court of Appeals
Fifth Circuit.

May 24, 1963.

Darrey A. Davis, County Atty., Miami, Fla., for appellant-appellee.

Phillip Schiff, for Dubbin, Schiff, Berkman & Dubbin, Miami, Fla., for appellee and cross-appellant.

Before TUTTLE, Chief Judge, and JONES and BELL, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal by Dade County and a cross-appeal by Palmer and Baker Engineers, Inc., from a judgment of the trial court, sitting without a jury, awarding Palmer and Baker Engineers, Inc. $241,626, and interest for out-of-pocket expenses incurred and paid by it in the partial performance of a contract which the trial court found to have been breached by Dade County before its completion.

The circumstances surrounding the execution of the contract between the parties are: The Board of County Commissioners of Dade County, Florida, determined that the County would provide a limited access toll facility, known as the Mid-Bay Drive, provided such project could be constructed on a self-sustaining financial basis by means of revenue bonds payable solely from tolls, and without the use of any County tax funds; in furtherance of such proposed public works project the County contracted for the services of engineers and a financial consultant on a contingency basis, dependent upon the issuance and sale of revenue bonds in an amount sufficient to pay all costs; the County engaged Ewin Engineering Corporation as consultant engineer on a contingent fee basis, the contract providing that the liability of the County for the payment of the engineering fees specified therein was contingent upon the availability and receipt of funds derived by the County from proceeds of revenue bonds issued for the payment of the construction costs of the project; the County also entered into a contract with Ira Haupt & Company for financial consultant services and to serve as underwriter for the proposed revenue bonds when the feasibility of the Mid-Bay Drive had been established. This was the posture of affairs when the contract between the parties here before the Court was entered into.

On November 24, 1959, the County entered into a contract with the plaintiff for design and construction engineering services in connection with the project. This contract expressly provided:

"5) It is understood and agreed that the entire costs for the construction of the Mid-Bay Drive project must be provided and financed by the proceeds derived from the sale of revenue bonds paid and secured solely from toll revenues produced by such project. Therefore, the payment of all compensa-

tion to the Design Engineer is contingent upon the availability and receipt of funds derived from the proceeds of revenue bonds issued and sold for the purpose of payment of the construction costs of said project, and the liability of the County for the payment of any compensation to the Design Engineer is limited to and shall be contingent upon the receipt of such funds. Any sums of money becoming due to the Design Engineer shall not in any event constitute a general debt or obligation of the County payable from any County tax revenues or funds. Provided, however, if the Design Engineer, after full completion and acceptance of the Design Phase work and services, establishes that this project is feasible both as to construction costs and available financing, and Ira Haupt & Co. agrees to purchase or sell revenue bonds sufficient in amount to fully finance the construction of such project, and the County Commission should decline to authorize the issuance and sale of such revenue bonds, then and in such event only, the County shall become liable to the Design Engineer for payment of the agreed compensation for providing the Design Phase engineering services from funds other than the proceeds derived from the sale of revenue bonds as aforesaid.

\*   \*   \*   \*   \*

"7) Except as provided in Paragraph 5 hereof, the Design Engineer (plaintiff) shall not be entitled to receive any payments of compensation until the proceeds of revenue bonds have been received by the County and construction contracts have been awarded and executed. \* \* \*"

After the plaintiff had performed approximately 49% of the design phase of the engineering work called for under its contract, it urged the Board of County Commissioners to adopt a series of resolutions, at least some of which the County concedes were required of it under its contractual agreement with the plaintiff. Principal among these was approval of the final alignment or route of the Mid-Bay Drive as proposed by the plaintiff and the making of application to the State, and City of Miami, for rights-of-way for the Mid-Bay Drive (the rights-of-way were rights-of-way over the water area of the project and did not involve the expenditure of the County funds). There was considerable delay following these requests and, although several meetings were held by the County Commissioners during the following months, up until November 22, 1960, the County had taken no action. On that date the Board of County Commissioners referred the Mid-Bay Drive project to the County Manager with instructions to make a study with respect to the design, self liquidating features, right-of-way acquisition, physical characteristics, and proposed alignment of the Mid-Bay Drive, in consultation with the County's engineering department, and make a report of recommendations in respect thereto to the Board. The County Manager proceeded to make some investigations but he resigned during February, 1961, and up to February 28, 1961, none of the actions recommended by the plaintiff had been acted on by the Board. On that date the plaintiff requested the Board of County Commissioners to make payment for the engineering services performed to date, the amount to be settled by arbitration. This proposal was declined, and, on March 21, 1961, this action for damages was filed by the plaintiff against the County.

The two questions before the Court for decision are, (1) did the record before the trial court justify its conclusion that the County was guilty of unreasonable delays in the performance of obligations imposed on it by the contract to such an extent that this amounted to a breach of the contract by the County, and, if so, (2) what is the measure of damages to be fixed under such circumstances in the case of a contingent

contract which if carried out in good faith by both parties to its ultimate conclusion might never have produced any compensation to the plaintiff.

The plaintiff contended that the action of the Board of County Commissioners constituted a complete abandonment of the contract. Its suit was based, therefore, on the assumption that for this breach of contract it was entitled to recover the full value of the contract. On the assumption that if permitted to complete the contract, it would have been entitled to its fee of 3.8% of the minimum cost figures for the construction of the project, less the amount it would have to expend in the performance of the balance of the contract, it claimed damages based on these figures. Dade County, on the contrary, contended that under no circumstances would the plaintiff be entitled to any reimbursement or compensation unless and until all of the contingencies touching on the feasibility and the sale of the bonds had occurred.

The trial court's critical fact findings are contained in the following paragraphs:

"The Actions of the Board of County Commissioners (as distinguished from expressions of intent of individual members of the Board) are insufficient as a matter of law to constitute abandonment of the contract. The actions of the Board were not sufficient to indicate a positive, unequivocal, or absolute refusal to perform the contract, but the defendant did breach the contract by unreasonable delay."

Although contained in paragraph 5 of the conclusions of law, the Court made the following finding of fact:

" * * * [T]he parties intended in the situation presented by the facts of this case to agree that necessary and reasonable out-of-pocket expenses be reimbursed and reasonable value of services rendered be paid, but that no agreed fees should be paid unless the project be completed."

The finding of fact quoted just above follows this conclusion of law by the Court:

"The Palmer Baker contract, unlike the Ewin Engineering contract, does not contain specific language regarding a quantum meruit or even a mere expense recovery, and thereby leaves a great void in the list of agreed rights of the parties, leaving apparently only the extremes of total recovery of the full contract price plus expenses in the event of a breach by the County, despite the fact that only possibly 1% of the work contemplated by the contract might have been performed, or no recovery at all despite 99% completion. This void, coupled with the inclusion in the Palmer Baker contract of the language set forth in Finding #7 reciting that said contract was made in conformity with the Ewin Engineering contract, creates such an ambiguity in the terms of the contract that this Court is required to determine the true intention of the parties; * * *."

We have here the rare situation in which a trial court has construed a contract which both parties claim to be unambiguous and plain in its terms by adding to the contract an agreement for partial payment which neither party agrees to. It doubtless appeared to the trial court that a substantial injustice would occur if parties entering a contract with the obligation to proceed in good faith to its conclusion which, if successfully accomplished, would cover not only out-of-pocket expenses, but a substantial profit for one of the parties, were faced approximately half way through the performance by a situation where one of the parties simply put an end to the matter by failing to carry out its obligations and thus not only destroyed the possibility, or even probability, of a profitable operation for the other party, but also made it impossible for the other party to recover substantial out-of-pocket expenses thus far made in its good faith performance. We

think, however, that it did not require a rewriting of the contract or a determination that the contract was ambiguous for the Court to be able to prevent this type of injustice.

The parties here take two extreme positions. That contended for by the defendant is that since the contract provided for compensation to Palmer and Baker only in the event certain contingencies were met, the fact that they were never met, even though the opportunity to meet them was the fault of Dade County, made it impossible for a court to find that Palmer and Baker were entitled to anything when a breach occurred. The other extreme asserted by Palmer and Baker is that since they were entitled to a profit if they were permitted to go to a conclusion of the contract without hindrance, a breach of the contract prior to full performance entitled them to the profit which they would have received had they been fortunate enough to find after they had done their work that the other contingencies had also fallen into place. The Court, on the other hand, seemed to feel that in order to meet this situation it was necessary for it to find that the parties had omitted an essential term from the contract which the Court had to supply.

We conclude that the error of appellant is that it viewed the affair on the assumption that the contract itself must make provision for the damages to be recovered in the event of a breach of contract and the failure to make such provision left the appellee helpless to obtain any redress. The essential point which was overlooked by both parties and the trial court is that the contract covered, and was intended to cover, only the compensation to be paid in the event it was carried out. It did not cover, and it did not purport to cover, what would happen if either party breached the agreement. It was, therefore, not necessary for the trial court to reconstruct the contract to cover the precise matter of damages in the event of a breach by the County of its implied agreement to proceed responsibly in the premises. The

problem for the Trial Court was to determine, once it found that a breach had occurred, the measure of damages, not under the terms of the contract but because the contract had been breached. Here the question is not what did the contract provide should happen under these circumstances, but what does the law provide where a contract of this kind is broken.

■ First, we affirm the Trial Court's finding that, although the contract does not expressly provide that time is of the essence, the County's conduct amounted to an unreasonable delay and was thus a breach of the implied term of the contract that it would act with due and reasonable diligence in performance of its obligations under the contract.

■ Finding, as we do that there was a breach of the contract by the County at a time when more than half of the performance by the engineering company remained to be done, there was no obligation on the part of the latter to continue to perform its services, if in fact this would be possible, which is not clear, in the face of the failure of the County to live up to its bargain. This, then, amounted to an anticipatory breach by the County which could then be accepted by the other party to the contract as a basis for seeking its damages.

Our effort to determine the true measure of damages under these circumstances is not aided by the parties to the appeal. Although five briefs have been filed, two by the county and three by the engineering company, these briefs are all directed to incorrect legal assumptions, those by the appellant Dade County seeking to establish the proposition that since the contract did not provide for any payment unless all contingencies were met then a breach of the contract would not entitle the engineers to any compensation and those of the appellees adamantly insisting that the Court must treat the contract as if there were no contingencies and grant them a recovery of the total amount provided for just as if they had completed the contract, the feasibility of the contract had been es-

tablished, and the bonds had been sold and all other matters satisfactorily concluded. Nevertheless, some citations of authority contained in the briefs deal with the general rule and it is apparent that the general rule may be made to fit this particular situation. The appellees quote:

"As a general rule profits which would have resulted from the performance of a contract may be recovered as damages for its breach. This is especially true where the breach consists in repudiating it or otherwise preventing its performance without default of the other party who was willing to perform it." 9 Fla.Jur., Damages, § 80.

Appellee further cites the case of Sullivan v. McMillan, 26 Fla. 543, 8 So. 450, for the proposition that where there has been a partial performance by one of the parties until a breach by the other, the measure of damages is the same profit that the innocent party would have earned had he fully performed the contract. We have no doubt that these two citations fairly state the rule as to recovery of damages in the event of a breach. The only question (and it is a big one) is "what are the profits which would have resulted from a full performance of the contract by Palmer and Baker Engineers?" Under the circumstances existing at the time of the trial, no one attempted to prove that if Palmer and Baker had not been prevented from completing these contracts it was a foregone conclusion that feasibility would have been demonstrated and financing would have been completed.

The appellant refers us to Corbin on Contracts, Volume 5, Section 1030, Page 156, where it is said:

"Ordinarily, the damages recoverable for a breach of contract are measured on the basis of the value of the promised performance. This is on the assumption that the performance would necessarily have been rendered if there had been no breach of contract. This assumption is not always a correct one. There

are many cases in which performance might not have taken place even if there had been no breach * * *.

"There are some cases in which it is not possible to prove with the necessary degree of assurance that a condition would have occurred if there had been no breach * * *.

"Where a contract right is conditioned upon the happening of some uncertain event and the breach by the promissor makes it impossible to determine with reasonable certainty whether or not the event would have occurred if there had been no breach, the promisee can recover damages measured by the market value of the conditional right at the time of the breach."

■ This quotation by Corbin is, it seems to us, simply another way of saying the same thing that is stated in the quotation cited on behalf of the appellees. That is, that the innocent party is entitled to the profits he would have earned if there had been no breach; but, of course, he must prove with reasonable certainty what the profits would have been.

Both parties cite the case of Poinsettia Dairy Products, Inc. v. Wessel Company, 123 Fla. 120, 166 So. 306, 104 A.L.R. 216, which involved an advertising contract and which was wrongly breached by the defendant after partial performance. It is to be noted that there was no contingency involved in this case. A part of the opinion quoted by the appellees is:

"Where a party, as defendant here, is under contract to accept and pay for certain services and materials to be furnished in installments by the other party, the plaintiff, after accepting part of the services and materials, breaches the contract by refusing to accept any further performance of services or delivery of materials, and refused to make the installment payments when due, that party, the defendant, is liable in damages to the other party, the

plaintiff; and the damages recoverable are such damages as would naturally result from the breach of the contract, whether as the ordinary consequence of such a breach, or as a consequence which may, under the circumstances, be presumed to have been in· the contemplation of both parties at the time they made the contract as the probable result of the breach of it. * * * This would include the reasonable and necessary expenses incurred, in good faith, by the plaintiff in partial performance of the contract, * * * together with the profits that would have been realized, if full performance had been permitted, as the direct and immediate fruits of the contract, as distinguished from remote and speculative profits." (Citations omitted)

The part of the opinion quoted by the appellant appears at 123 Fla. page 120, 166 So. page 309, 104 A.L.R. 216, and is as follows:

"Whenever, as here, one of the parties to a contract, while the contract is still executory, directs the other party not to proceed further with the performance thereof, the former has breached the contract and the latter may bring an action for damages for the breach of the contract, or an action upon the quantum meruit for the value of the services rendered and materials furnished. (cases cited) And in such cases action cannot be maintained to recover the contract price, but may be maintained to recover the damages for the breach of the contract."

Appellant argues that the suit by Palmer and Baker Engineers must be treated as a suit based upon rescission following the breach by the County and that it is thus an action upon quantum meruit as suggested by the Florida Court in the last quoted paragraph in the Poinsettia Dairy Products case. It is plain, however, that the suit here was a suit for damages for the breach of the contract and was not a suit for quantum meruit.

Giving full consideration to these Florida authorities, we think the legal principles are reasonably clear: If a party to a contract breaches it by his conduct, the innocent party is entitled to his damages which will represent his lost profits which he would have been entitled to had he completed the contract; in such circumstances, if the contract is still executory, or partially so, the innocent party may sue for quantum meruit for the value of the services rendered and materials furnished up to the date of the breach; if a suit for damages for breach of contract is filed the plaintiff is under the burden of proving what its profits would have been if there had been no breach; in the event that there are contingencies that must be satisfied before the innocent party is entitled to any profit under the contract, then the fact finder must take into consideration the likelihood that these contingencies will actually be met in determining the value of the contract or the profits which he would have made if permitted to complete the undertaking.

Unfortunately, the record before us does not permit us to make a final determination of the rights of the parties. The trial court has not considered what amount the plaintiffs were entitled to as for a breach of the contract. The judgment was based rather on the trial court's determination that the contract should be modified to include a provision that under the circumstances then existing the plaintiff should recover the amount of out-of-pocket expenses to date.

In order to permit the consideration of the issues as now defined the judgment of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.