**Vigdor SCHREIBMAN, Appellant,**

**v.**

**Marcus D. MASON et al., Appellees.**

**LAS COLINAS, INC., et al., Appellants,**

**v.**

**Marcus D. MASON et al., Appellees.**

**Nos. 6729, 6730.**

United States Court of Appeals
First Circuit.

Heard Feb. 7, 1967.

Decided April 26, 1967.

**100**

Vigdor Schreibman, for appellants.

Vicente M. Ydrach, San Juan, P. R., with whom Jose L. Novas and Hartzell, Fernandez & Novas, San Juan, P. R., were on brief, for Jose Menendez Roig, trustee, appellee.

* By designation.

I. 11 U.S.C. § 701 et seq. (Chapter XI) and 11 U.S.C. § 501 et seq. (Chapter X).

2. One mortgage dated April 26, 1962, is for $500,000. Two others dated Febru-

Garrard Harris, San Juan, P. R., with whom Baragano, Trias, Saldana, Harris & Francis, San Juan, P. R., was on brief, for Banco Popular de Puerto Rico, appellee.

Before ALDRICH, Chief Judge, MARIS * and McENTEE, Circuit Judges.

McENTEE, Circuit Judge.

These are consolidated appeals from certain orders entered in a bankruptcy proceeding originally brought under Chapter XI of the Bankruptcy Act and later transferred to Chapter X.[1] Two of these appeals are from the order of the district court transferring the proceedings to Chapter X. The pertinent facts leading up to this transfer are as follows. In December 1963 and for some time prior thereto the appellant, Las Colinas, Inc., and its wholly owned subsidiary, Eastern Shore Development Corporation, were actively engaged in developing a large tract of land in Puerto Rico on which they were building a number of houses for sale to the public. Appellant Schreibman is president of both corporations and the majority stockholder in Las Colinas. From the beginning this development was financed in large part by a bank known as Banco Popular de Puerto Rico. As of the latter part of December 1963 this bank held mortgages on the Las Colinas real estate totalling $3,750,000.[2] The actual amount of the indebtedness was very considerably less. At or about that time a controversy broke out between the parties as a result of which the bank refused to advance Las Colinas any more money. Shortly thereafter, construction on the project came to a halt. At that point Las Colinas had eighty-three houses under construction, all of which were near completion. In fact, deposits totalling $194,000 had been made on them by prospective purchasers. Efforts to resolve the contro-

ary 4 and 5, 1963, are for $750,000 and $500,000 respectively, and a fourth one secured payment of a mortgage note for $2,000,000 dated December 20, 1963.

versy having failed, in July 1964 the bank brought suit in the Superior Court of Puerto Rico to foreclose these mortgages.[3]

Three months after the filing of the foreclosure action, Las Colinas and Eastern Shore (hereinafter the debtors) filed this Chapter XI petition. At this point we think it is pertinent to review briefly the corporate structure and the general financial condition of Las Colinas as of the date of filing of the petition. This corporation has only one class of stock, Class A common, of which there is a total of 1,000 shares issued and outstanding. The stock is held by twenty-seven parties, several of whom are related by blood or through marriage. Appellant Schreibman owns 53%. In addition, there are two classes of debenture bonds outstanding, both unsecured, in a total amount of $436,000. These bonds are held by thirty-one persons, most of whom are also stockholders.

The schedules which accompanied the debtors' Chapter XI petition show debts of approximately $3,602,700 and assets of some $10,567,000.[4] The plan of arrangement filed with the debtors' petition proposes payment of the priority and secured debts as they mature and payment in full of the unsecured creditors. The successful execution of this plan is predicated upon (1) debtors' continued operation of the business; (2) additional financing through the issuance of certificates of indebtedness, which are to have priority over existing obligations; (3) employing the money raised through these certificates to complete the eighty-three houses and (4) using the proceeds from the sale of these houses to pay

---

3. In this foreclosure action, which has already been tried but is awaiting decision, Las Colinas filed a counterclaim for five million dollars. Part of this counterclaim is for the return of debtors' two million dollar mortgage note (see n. 2) which debtors claim is without consideration and otherwise invalid. Although on the record before us we are not involved with the merits of this suit, we take judicial notice of its existence and present status.

4. "DEBTS

PRIORITIES

| | |
|---|---:|
| Wages .............................................$ | 2,121.21 |
| U. S. Taxes ......................................... | 1,756.27 |
| Local Taxes ........................................ | 11,090.96 |
| Municipal Taxes .................................... | 32.37 |
| Rents .............................................. | 750.00 |
| Secured Debts ..................................... | 2,267,214.12 |
| Unsecured Debts ................................... | 1,319,776.23 |
| Total Debts ...............$ | 3,602,741.16 |

ASSETS

| | |
|---|---:|
| Real Estate ........................................$ | 3,344,011.01 |
| Furniture, Fixtures & Equip. ......................... | 26,809.54 |
| Other Assets ....................................... | 11,173.48 |
| Unliquidated Claims ................................. | 6,710,925.00 |
| Deposits .......................................... | 1,226.25 |
| Property in Reversion .............................. | 472,976.00 |
| Total Assets ...........$ | 10,567,121.38 |

(A) The unliquidated claims consisted of:

| | |
|---|---:|
| (a) Claim for damage under ins. policy ................$ | 150.00 |
| (b) Claim against Banco Popular for damage resulting from alleged breach of agreement ....................... | 5,000,000.00 |
| (c) Claims against sub-contractors for tardiness and deficiencies ...................................... | 1,530,775.00 |
| (d) Claim for damages against Robert F. McCune ....... | 180,000.00 |
| | $6,710,925.00" |

off the certificates and various creditors as well.

This plan was accepted by a majority of the unsecured creditors. Also, it was confirmed by the referee in bankruptcy in January 1965, subject to the requirement that the debtors make a deposit to cover payment of court costs and priorities.[5] Debtors then petitioned for authority to issue certificates of indebtedness up to the amount of some $806,000. The bank objected. In May 1965 the referee denied this petition without prejudice "there being no specific agency prepared to make such loans."

The debtors continued in possession, but due principally to lack of adequate financing no real progress toward completing the houses was made during the next few months.[6]

In August 1965 a bondholder, who was later joined by several other bondholders, all of whom are appellees, petitioned the court to transfer the proceedings to Chapter X of the Bankruptcy Act alleging that adequate relief could not be obtained under Chapter XI. The court referred this petition to a Special Master[7] "to consider, hold hearings, make findings of fact and recommendations * * *" to the court.

At the hearing before the Special Master the bank and the debtors both vehemently objected to transferring the proceedings to Chapter X. The bank urged that the debtors be declared bankrupt and that liquidation proceedings be commenced without delay. In October 1965 the Special Master made his findings which the district judge adopted and thereupon entered an order transferring these proceedings to Chapter X[8] and subsequently appointed a trustee who is also an appellee in this case.

■ The petition to transfer to Chapter X was brought under Section 328 of the Bankruptcy Act (11 U.S.C. § 728).[9] Under this section the question of whether the transfer should be made is a matter solely for the district judge's discretion. But as pointed out in the leading case of S. E. C. v. American Trailer Rentals Co., 379 U.S. 594, 619, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965), this discretion is not open-ended and does not allow the district judge to decide on a case-by-case basis whether it would be better for a particular debtor to be under Chapter X or Chapter XI. In the exercise of his discretion, the trial judge must rely on the principles reaffirmed in American Trailer Rentals.

5. One of the issues raised on appeal is whether the debtors actually complied with this deposit requirement but we do not reach that question.

6. It should be noted that throughout this case the debtors also sought without success to have the district court determine the validity of the two million dollar mortgage note above mentioned, the validity of which is in issue in the Superior Court in the foreclosure suit; enjoin these foreclosure proceedings and have that suit transferred to the district court.

7. It is interesting to note that the Special Master appointed by the court was the referee in bankruptcy who some eight months earlier had approved the debtors' plan of arrangement.

8. The court ordered the shift to Chapter X on December 29, 1965, but on January 17, 1966, entered another order nunc pro tunc specifically adopting the Special Master's "findings of fact and conclusions of law * * * as its own."

9. "The judge may, upon application of the Securities and Exchange Commission or any party in interest, and upon such notice to the debtor, to the Securities and Exchange Commission, and to such other persons as the judge may direct, if he finds that the proceedings should have been brought under chapter 10 of this title, enter an order dismissing the proceedings under this chapter, unless, within such time as the judge shall fix, the petition be amended to comply with the requirements of chapter 10 of this title for the filing of a debtor's petition or a creditors' petition under such chapter, be filed. Upon the filing of such amended petition, or of such creditors' petition, and the payment of such additional fees as may be required to comply with section 532 of this title, such amended petition or creditors' petition shall thereafter, for all purposes of chapter 10 of this title, be deemed to have been originally filed under such chapter."

■ The first of these principles was enunciated in S. E. C. v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940). In that case the Court made it clear that "in enacting Chapter X Congress had the protection of public investors, and not trade creditors, primarily in mind." American Trailer Rentals, supra, 379 U.S. at 614, 85 S.Ct. at 1524. Some fifteen years later in General Stores Corp. v. Shlensky, 350 U.S. 462, 76 S.Ct. 516, 100 L.Ed. 550· (1956), ·the· Court pointed out that the question whether Chapter X or Chapter XI is the more appropriate proceeding depends upon "the needs to be served." It then went on to say that the phrase "needs to be served" includes " * * * such factors as requirements of fairness to public debt holders, need for a trustee's evaluation of an accounting from management or that new management is necessary, and the need to readjust a complicated debt structure requiring more than a simple composition of unsecured debt." American Trailer Rentals, supra, 379 U.S. at 610, 85 S.Ct. at 522.

In exercising his discretion here, the district judge relied upon and adopted the Special Master's findings of fact and conclusions of law as his own. Hence, it becomes material whether the Master in making his findings followed the guidelines developed in *United States Realty* and *General Stores* which are elucidated and reaffirmed in *American Trailer Rentals,* supra. From our analysis of this report, we think it is obvious that the Master did not follow these guidelines. In the first place, there is no indication in the report that he considered any of the above mentioned factors which enter into a determination of the "needs to be served." We fail to find any mention or analysis of the number or character of the investors, whether the stock of Las Colinas was offered or sold to the public generally or

how widespread geographically the investors may be. In addition, it appears that the Special Master did not look into or make findings on whether there was a need for a disinterested trustee to make a thorough study and examination of debtors' financial problems; of whether there should be an accounting from the present management or whether there is a need for new management. Nor do we find any evidence that he sufficiently considered the complexity of any financial adjustment required of the debtors. Finally, it is clear that the Master did not make any appraisal of whether there is a need for a complete corporate reorganization as distinguished from a simple Chapter XI composition.

Instead, the Master for the most part merely restated information already contained in the pleadings which had to do primarily with debtors' plan of arrangement and the statement of financial condition set forth in the schedules filed with the Chapter XI petition. From this he came to the obvious conclusion that the debtors' development project could not get started again without new and additional financing; that such financing is·unlikely until the validity of Banco's security, which is in issue in the Superior Court foreclosure suit, is determined,[10] the outcome of which may present "an entirely different picture." He further stated that Chapter X offered a form of relief not presently available to the debtor under Chapter XI, meaning that under Chapter X the court could adjust the bank's secured claim which it could not do under Chapter XI. But this statement is merely another way of stating the basic distinction between the classes of debtors affected by these two chapters. Moreover, it is significant that the Special Master, although directed by the order appointing him to make a recommendation with reference to the

10. See n. 3.

transfer of the proceedings to Chapter X, did not do so.[11]

It is our opinion, therefore, that the district judge in ordering the transfer of these proceedings to Chapter X on the basis of the Special Master's report, exercised his discretion without regard to the guidelines stated in *American Trailer Rentals*, supra, and therefore this order cannot stand.

The question now arises as to what should be done next. In S. E. C. v. Burton, 342 F.2d 783 (1st Cir. 1965), we returned a similar transfer question to the district court for further consideration in the light of *American Trailer Rentals*, supra. It seems particularly appropriate that this should also be done here. For economic reasons the matters raised in the mortgage foreclosure proceedings now pending in the Commonwealth court are, very possibly, the key to any possibility of reorganization. Not only did the district court in entering this transfer order fail to consider which chapter, if either, might facilitate the obtaining of new working capital, it also failed to consider whether under either chapter it could, or should, take over the determination of the questions raised in the Commonwealth proceedings in the interests of saving time.

Such questions not having been considered below, or adequately presented here, we vacate the orders of the district court shifting to Chapter X and remand for further proceedings not inconsistent herewith.[12]

---

11. In the final paragraph of his report, the Special Master stated that in his opinion the " 'Amended Petition to Shift Proceedings to Chap. X' and the 'Joinder by Petitioning Creditors' should be granted as they do not basically alter the issue of whether [or] not the conversion to Chap. X should be granted." But by letter to the district judge dated October 22, 1965, he stated that "in recommending that they [the motions] be granted, I intended sole- ly to imply that their filing should be permitted as the basic issues were not changed or altered thereby. It was not my intention to recommend in any way what the final disposition should be on the proposed conversion to Chapter X."

12. In view of this holding it is unnecessary to consider the other questions raised by these appeals.