In the Matter of LAS COLINAS, INC., et al., Debtors.

Appeal of BANCO POPULAR DE PUERTO RICO.

In the Matter of Las Colinas, Inc., et al., Debtors, Appellants.

Nos. 71–1047, 71–1048.

United States Court of Appeals, First Circuit.

Heard Nov. 18, 1971.

Decided Dec. 21, 1971.

Certiorari Denied April 17, 1972. See 92 S.Ct. 1502.

---

912

Vicente Zayas Puig, Hato Rey, P. R. with whom Juan F. Doval and Baragano, Trias, Saldana & Francis, Hato Rey, P. R. were on brief, for Banco Popular De Puerto Rico.

Vigdor Schreibman, pro se, for Las Colinas, Inc., and others.

Before COFFIN, Circuit Judge, VAN OOSTERHOUT *, Senior Circuit Judge, and STEPHENSON *, Circuit Judge.

COFFIN, Circuit Judge.

This is the third occasion for us to consider the trials and tribulations of a residential housing development project on the eastern coast of Puerto Rico.[1] In our last review, we remanded the case to the district court to reexamine the evidence and decide whether the debtors in possession of the project, Las Colinas, Inc., and Eastern Shore Development Corporation [Las Colinas] and their bank, Banco Popular de Puerto Rico, intended credits totalling $1,750,000 to be "revolving", i. e., a maximum exposure within which proceeds of sales of houses would be paid to the bank, releasing like sums for financing of future construction, or a fixed amount to be paid at the due date in one sum. A second issue involved a $2,000,000 mortgage given by Las Colinas to the bank which we found, in view of the circumstances of its execution and the value of pre-existing se-

---

* Of the Eighth Circuit, sitting by designation.

1. The first was a review of efforts to transfer a Chapter XI proceeding to one under Chapter X. Schreibman v. Mason, 377 F.2d 99 (1st Cir. 1967). The second, containing a general description of the factual background germane to this appeal, was a review and reversal of bankruptcy court action permitting a bank creditor to have some of the debtors' mortgaged property sold at public auction. In re Las Colinas, Inc., 426 F.2d 1005 (1st Cir. 1970).

curity for the debt owing the bank, to be grossly excessive and unfair. We therefore also remanded the case for a determination of damages.

█ The district court, as to the first issue, reviewed the evidence and concluded that the bank had committed itself to revolve the $1,750,000 line of credit. In so doing it found that the bank had accepted a work plan or budget which contemplated the gross expenditure of funds much greater than the line of credit approved, indicating an intent that the credits be turned over as sales proceeds were received and paid to the bank; that a Federal Deposit Insurance Corporation report revealed that the scope of the bank's financing encompassed the entire project rather than the half of the project which the bank contended was its more limited objective—a scope inconsistent with its contention that the credits were to be repaid on completion of half of the houses; and that the bank acknowledged that its advances were to be used for houses in addition to the alleged half-way cut-off. The court also noted the specific testimony of debtors' officials, to which it obviously gave credence, that the financing was to be of a revolving character. The bank makes arguments as to the significance of the work plan or budget, the F.D.I.C. report, the credibility of bank witnesses, and the incredibility of debtors' witnesses, all of which were pertinent at the trial level but fall short of demonstrating to us lack of support for or clear error in the district court's decision.

█ On the second issue, the determination of damages, the court properly found that the bank, when debtors were about to begin realizing sales from their properties and to be able to replenish the purse that fed them, changed the rules and demanded full payment for all monies advanced, refusing to release any encumbrance on properties to be sold, and thus repudiating the contract. In addition to this credit freeze was the arctic chill of the illegally superimposed

$2,000,000 mortgage, forestalling resort to other sources of financing. Accordingly, the court held that the bank could not insist on repayment of the indebtedness of some $1,776,532 due it. But as to the debtors' claim for additional damages in the amount of $2,756,792, the court concluded that cancellation of the debt in the amount of $1,776,532 was enough—"most suitable under the circumstances present."

The court, proceeding Solomonically, noted that the debtors had expressed themselves as "willing to forego their claims for damages in favor of judgment for a dismissal and discharge of the Bank's claim against the Debtors, in its entirety." Debtors now complain that their "alternative" offer was not meant to come into play until there had been a specific finding that their claim for damages was not greater than the amount of their debt to the bank, and that this finding was not made. They added yet another proviso at oral argument: that if we are unable to determine additional damages from the record before us, they would prefer to let matters stand as the district court disposed of them rather than to be subjected to the burden of another attenuated proceeding.

We accept their offer. While the district court did not follow with precision the course we charted, it arrived at a result both sensible and, we think, consistent with the nature of the claims made. From the debtors' point of view, in order to be made whole, they would have to be compensated for the following elements of damage: the increases in costs of completion stemming from the changes in economic conditions between 1963 and 1970; additional administrative and prepaid expenses, and taxes caused by delay; their lost revenues from rental of all houses and lots on the section being developed; their lost interest on the value of land not being developed; and attorney's fees and expenses. Debtors have woven a fine skein from the testimony of various witnesses, arriving at a grand total of damages of

**914**

$4,533,324. But many of the threads are fragile, and the final web is too gossamer to bear weight.

We must note that a housing development is by definition a new venture, a speculation. What costs would have been, what sales or rentals would have been, what the economy would have been for buyers and borrowers, in a relatively undeveloped and remote part of Puerto Rico, are questions we cannot answer with any confidence from an inconclusive record. We suspect that the district court would take a similar view. For debtors to prevail, they must persuasively prove that completion would have proceeded without complication, that all houses and lots in their developed area would have been sold or rented without difficulty, and that even their undeveloped land would have a market. Were we to remand for a more precise determination, we would think it probable that a substantial part of the damages claimed would be deemed too speculative and remote. *See* Restatement of Contracts § 331, illustrations 6 and 8 at 519 (1932). As to § 331, subsection (2), which would give rental value if there is no basis to estimate lost profits, we have found no case where rental value has been awarded on undeveloped, still speculative properties.

■ We think, rather, that the appropriate rule for damages is that contained in Restatement of Contracts § 333 (1932): "The amount of the plaintiff's expenditure, reasonably made in performance of the contract or in necessary preparation therefore . . . [minus] the value of the material on hand. . . ." *See* comment b at 526–27, and illustrations 1, 5, and 6 at 528–30. *See also* § 343, illustrations 2 and 3 at 564–65, illustration 14 at 582; 5 Corbin on Contracts § 1031 (1964); United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168 (1884); Robie v. Ofgant, 306 F.2d 656 (1st Cir. 1962); Dade County, Florida v. Palmer & Baker Engineers, Inc., 318 F.2d 18 (5th Cir. 1963), 339 F.2d 208 (5th Cir. 1964).

■ While debtors' expenditures in reliance on the bank's undertaking, plus such losses as are capable of measurement, minus the present value of improvements, may not be in an amount identical to the monies advanced by the bank, we think that these net damages caused by the bank's default and overreaching are approximately equivalent to the credits extended by the bank. We therefore think that substantial justice was done in relieving debtors of the burden of repayment of their indebtedness to the bank and that a remand would only protract already over-extended litigation while producing substantially the same result.

Affirmed.