585 F.2d 7
 Bankr. L. Rep. P 67,002
In re LAS COLINAS DEVELOPMENT CORPORATION, Debtor.
Vigdor SCHREIBMAN et al., Appellants,
v.
WALTER E. HELLER & COMPANY OF PUERTO RICO and Walter E.
Heller & Company, Appellees.
 No. 78-1148.
 United States Court of Appeals,
First Circuit.
 Submitted Sept. 7, 1978.
Decided Sept. 21, 1978.
 
 Vigdor Schreibman, on brief, for appellants.
 Edward I. Cutler, John K. Olson, and Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P. A., Tampa, Fla., on brief, for Walter E. Heller & Co. of Puerto Rico and Walter E. Heller & Co., appellees.
 Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.
 BOWNES, Circuit Judge.
 
 
 1
 The central issue in this case can be stated simply: Does the nonlawyer president and majority stockholder (94%) of a corporation have a right to represent the corporation in all stages of a Chapter XI bankruptcy proceeding?
 
 
 2
 Appellants, Las Colinas Development Corporation (Development) and Vigdor Schreibman, appeal from a ruling of the bankruptcy court, affirmed by the district court, that Schreibman could not represent Development. While appellants have not directly appealed the decision on the merits, it must be noted that the bankruptcy court found in favor of the appellees, Walter E. Heller & Company of Puerto Rico and Walter E. Heller & Company (Heller), and against Development and Schreibman as a creditor of Development. The findings on the merits were also affirmed by the district court.
 
 
 3
 The facts giving rise to this case are a tangled skein enmeshed in loose threads and have their genesis in Schreibman's efforts to develop a large tract of land in Fajardo, Puerto Rico. The first official step in this lengthy and, at times, circuitous judicial odyssey began with a foreclosure suit in the Superior Court of Puerto Rico in July of 1964, brought by Banco Popular de Puerto Rico against Las Colinas, Inc., and its wholly owned subsidiary, Eastern Shore Development Corporation. Schreibman was president of both corporations and majority stockholder of Las Colinas, Inc. Three months after the filing of the foreclosure action, Las Colinas, Inc., and Eastern Shore Development filed a Chapter XI bankruptcy petition. The district court ordered the proceedings transferred to Chapter X. Schreibman appeared Pro se as an individual creditor and represented Las Colinas, Inc., in the bankruptcy and district courts and on appeal. We vacated the transfer order and remanded. Schreibman v. Mason, et al.; Las Colinas, Inc., et al. v. Mason, 377 F.2d 99 (1st Cir. 1967).
 
 
 4
 That same Chapter XI proceedings spawned another case. Las Colinas, Inc., Eastern Shore Development Corporation, and Schreibman, individually, appealed a decision of the bankruptcy court permitting the bank (Banco Popular de Puerto Rico) to sell certain of the mortgaged property at public auction to satisfy the indebtedness. Schreibman appeared Pro se and represented both corporations as "attorney-in-fact." We vacated the judgment of the district court and remanded. In Re Las Colinas, Inc., 426 F.2d 1005 (1st Cir. 1970).
 
 
 5
 In another offshoot of the same case, we affirmed the district court as to amount and type of bank line of credit and damages. In Re Las Colinas, Inc., 453 F.2d 911 (1st Cir. 1971). Schreibman appeared "pro se, for Las Colinas, Inc., and others."
 
 
 6
 There appears to have been no question raised as to Schreibman representing Las Colinas, Inc., in any of these three cases.
 
 
 7
 The case now before us started on December 6, 1972, when Las Colinas, Inc., sold to Development all of its real property (773.04 cuerdas) and improvements for $1,200,000 in cash and a purchase money mortgage note in the amount of $5,663,000. On the same day, Development purchased a one-fifth interest in a smaller tract (245.65 cuerdas) located in the southern portion of the main tract from Sucesion De Danilo de Celis Perez (de Celis) for $250,000 in cash and a purchase money mortgage of $309,400. At the same time, Development gave to Heller[1] a sixty month note in the principal sum of $2,800,000 and a thirty-six month note in the principal sum of $1,200,000 secured by a mortgage on the property acquired from Las Colinas, Inc., and de Celis. The mortgage to Las Colinas, Inc., was fully subordinated to the Heller mortgage.
 
 
 8
 Sometime in the summer of 1974 a controversy arose between Development and Heller as to the terms and conditions of the financing agreement. Suits by several creditors were filed against Development's property in the Superior Court of Puerto Rico. Schreibman filed a Chapter XI proceeding on behalf of Development on December 17, 1974. The first meeting of creditors was held in March, 1975. At this meeting, Heller filed a proof of claim, a motion challenging the Chapter XI petition, because it was not signed by an attorney, and sought relief from the automatic stay-of-lien enforcement pursuant to Bankruptcy Rule 11-44(a).[2] Development, on March 14, 1975, filed a complaint attacking the validity of Heller's mortgage claim and seeking damages. It combined an answer to the Heller complaint with an objection to the Heller claim.
 
 
 9
 On April 3, 1975, Bankruptcy Judge Rafael A. Rivera-Cruz issued an order holding that the Chapter XI petition "is subject to being nullified" because it was not signed by a lawyer and giving Development fifteen days to obtain counsel. This order was appealed unsuccessfully to the district court and then to us. We dismissed the appeal. In Re Las Colinas Development Corporation, Misc. No. 75-8103 (December 4, 1975). Development then petitioned us for a writ of mandamus and prohibition so that Schreibman could represent it in the bankruptcy court, which we denied. In denying a motion for reconsideration one month later, we stated:
 
 
 10
 The motion for reconsideration is denied. The fact that this court has on occasion departed from its normal practice and allowed the petitioner to be represented by its president, who is not a lawyer, does not mean that any other court is required to make a similar exception on another occasion. Petitioner's constitutional claims may be raised in an appeal from a final judgment in the bankruptcy proceeding, and we express no views on them at this time.
 
 
 11
 In Re Las Colinas Development Corporation, No. 76-1538 Original (Jan. 20, 1977).
 
 
 12
 In December of 1976, de Celis also filed a complaint for relief from the Rule 11-44(a) stay. By pretrial order of Bankruptcy Judge Asa S. Herzog of March 10, 1977, all adversary proceedings involving Development, Heller and de Celis were consolidated for trial which was held on March 28 and 29, 1977. The issues at trial involved the scope and validity of the Heller mortgage and a valuation of the mortgaged property to determine whether or not there was any equity over and above the mortgage and other encumbrances that could be realized for the benefit of the estate. The bankruptcy judge found in favor of Heller and set aside the Rule 11-44(a) stay on June 22, 1977. No appeal by Development was taken from this order.
 
 
 13
 On July 28, 1977, Heller brought a complaint in the district court asking that a receiver be appointed, the exact amount of the debt be determined and, if the debt was not paid, that the mortgaged property be sold to satisfy the claim. Development did not answer and was defaulted on September 9, 1977. Schreibman had brought a motion to intervene on August 12, which was denied by the district court. We affirmed the district court in an unpublished opinion. Walter E. Heller & Company v. Las Colinas Development Corporation, et al. v. Vigdor Schreibman, 577 F.2d 723 (1st Cir. 1978).
 
 
 14
 The final round in the preliminary contest was our granting of Heller's motion to dismiss the appeal of Schreibman as an individual and denying its motion to dismiss the appeal of Development. Walter E. Heller & Company v. Las Colinas Development Corp., Misc. No. 78-8071 (July 27, 1978).
 
 
 15
 The background of this case is not complete without a recitation of what transpired immediately prior to and at the trial in the bankruptcy court. Development had been represented by retained counsel, Rigau and Figuerora, since June 30, 1976. Another attorney, Benito Gutierrez Diaz, also represented Development. It is not clear when his representation commenced, but it was prior to June of 1976. On February 28, 1977, Bankruptcy Judge Hernandez-Rodriguez allowed Gutierrez Diaz to withdraw as counsel for Development, but denied Rigau and Figuerora permission to withdraw. Judge Hernandez-Rodriguez noted in his order that, on January 17, 1977, he had set a pretrial conference for March 10, 1977, and ordered all counsel to be present. After Rigau and Figuerora were denied permission to withdraw, Schreibman filed an affidavit of disqualification as to Judge Hernandez-Rodriguez and brought a motion to declare all his orders invalid. This motion was denied by Bankruptcy Judge Herzog on March 10, 1977, who had been assigned the case for trial.[3]
 
 
 16
 Development and Schreibman again moved that Rigau and Figuerora be allowed to withdraw and that Schreibman be permitted to represent Development. One of the grounds of the motion was that there were no lawyers in Puerto Rico capable of handling the case. It was also asserted that Development could not afford a lawyer. After an evidentiary hearing on the motion, Schreibman was denied permission to represent Development and Rigau and Figuerora were denied leave to withdraw and were ordered to continue to represent Development until "substituted" by new counsel approved by the Bankruptcy court. As far as we can determine from the records, Rigau and Figuerora have never been granted permission to withdraw as counsel for Development.
 
 
 17
 This brings us to the trial which commenced on March 28. Attorney Rigau, who was present (Figuerora had left for a trip to Europe), again asked for permission to withdraw, which was denied. In his written opinion of March 29 directed solely to this motion, Bankruptcy Judge Herzog pointed out that Attorney Rigau was adequately prepared for the case, that he enjoyed good rapport with Schreibman, and that substituting new counsel at this time would mean another long delay. He met Rigau's concern about compensation (he had been paid $6,000 to date) by arranging to have him paid reasonable compensation by Heller after the property was sold or the mortgage foreclosed.
 
 
 18
 Rigau's unwilling representation of his unwilling client on the first day of trial was desultory, but he participated by objecting to questions examining on a voir dire and cross-examining some witnesses. On the morning of the second day of trial, Development filed a paper signed by Schreibman as president entitled "Notice by the Debtor by Its President to Cease All Participation in Further Proceedings." It, among other things, recited that, because of the court's refusal to allow Schreibman to represent Development, and because of Rigau's advice that he was unable to and would no longer participate in the trial, Development could not and would not proceed until review by a high court assured it of its full rights and privileges. Rigau was directed by the court to continue to represent Development. His conduct of the trial from then on can best be described as contemptuous and obstreperous. No evidence was put in by Development after Heller rested, although Rigau was given full opportunity to do so. Schreibman was present only on the first day of the trial.
 
 
 19
 The lengthy recitation of the background facts is necessary to put the matter before us in proper perspective. While Schreibman had been allowed to represent Las Colinas, Inc., and Eastern Shore Development without objection, he was put on notice at the time of the meeting of creditors in Development's Chapter XI proceeding that his right to represent Development was challenged. Three different bankruptcy judges ruled that Schreibman could not represent Development, which rulings were affirmed by three different district court judges. The attempts to have those rulings set aside by us were rebuffed. Development was represented by counsel at the trial, but Rigau, with the approval and active encouragement of Schreibman, provided only token representation. Development and Schreibman deliberately refused to address the case on the merits in the bankruptcy court, but focused exclusively on Development's claimed right to have Schreibman represent it. All of the eggs were put into one basket. We now determine the carrying power of that basket.
 
 
 20
 Development's claim of right to representation by its nonlawyer president and majority stockholder is three-pronged: (1) that this particular situation should be an exception to the rule prohibiting laymen from representing corporations; (2) the rule is illegal because it contravenes the Sherman Anti-Trust Act; and (3) the rule denies a corporation due process of law and is, therefore, unconstitutional.
 
 
 21
 In In Re Victor Publishers, Inc., 545 F.2d 285 (1st Cir. 1976), we followed the well-established rule and held that in a Chapter XI proceeding a nonlawyer could not represent a corporation. After citing a number of cases, we stated:
 
 
 22
 This rule that a corporation may be represented only by licensed counsel is based not just on a tradition that goes back to the common law, Brandstein v. White Lamps, Inc., 20 F.Supp. 369 (S.D.N.Y.1937), but also on the practical consideration that "(s)ince a corporation can appear only through its agents, they must be acceptable to the court; attorneys at law, who have been admitted to practice, are officers of the court and subject to its control."
 
 
 23
 Id. at 286. We also, unfortunately, stated in a footnote:
 
 
 24
 Mr. Pace cites the case of In re Las Colinas, Inc., 453 F.2d 911 (1st Cir. 1971), Cert. denied, 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed.2d 797 (1972), as an instance where we permitted a non-lawyer to represent a corporation. Special considerations, including the extraordinary legal ability that had been demonstrated by the corporate officer in that case, caused us to make an exception from the traditional rule that "(a) corporation . . . can appear only by attorney." Osborn v. Bank of United States, 9 Wheat. 738, 830, 22 U.S. 738, 830, 6 L.Ed. 204 (1824) (Marshall, C. J.).
 
 
 25
 Id. at 286.
 
 
 26
 Leaving aside the question of whether extraordinary legal ability of a layman should ever be an exception to the established rule, the precedential effect of the footnote was severely eroded by our order of January 20, 1977, Supra.
 
 I. THE EXCEPTION CLAIM
 
 27
 The only reported case we have been able to find holding contrary to the rule prohibiting representation of a corporation by a layman is In the Matter of Holliday's Tax Services, Inc., 417 F.Supp. 182 (E.D.N.Y.1976). In that case, it was held that a corporation could be represented by its owner where both had filed Chapter XI proceedings and neither the corporation nor the individual owner could afford an attorney. Most of the opinion is a polemic on the unavailability of legal services to lower and middle income persons in civil cases. Although Development, here, claimed that it could not afford an attorney, the fact is that it had paid $6,000 in legal fees and expenses to Attorneys Rigau and Figuerora. Moreover, Bankruptcy Judge Herzog had obtained an agreement from Heller for the payment of reasonable fees to Development's attorney at the close of the case. There is no merit to Development's claim that it could not afford to retain an attorney. In Holliday's Tax Services, Inc., supra, the court specifically noted, "Courts can protect against abuses in bankruptcy by requiring a showing of good faith before permitting the corporation to appear by its owner." Id. at 185. Obstinate persistence in an undeviating course of conduct is not a showing of good faith. Holliday's Tax Services, Inc., is neither generally nor specifically good precedent for appellant's position. We refuse to create an exception for Development so that it can be represented by Schreibman.
 
 II. THE ANTI-TRUST CLAIM
 
 28
 Development has not specified what section or sections of the Sherman Act the rule prohibiting laymen representation contravenes. Its position seems to be that lawyers have a monopoly on the practice of law and forcing all corporations to be represented by lawyers in the federal courts "constitutes a vast and grave restraint and monopoly of commercial intercourse." Appellants' Brief at 42. Goldfarb v. Virginia, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), and Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), are cited as support for this novel theory. But this case has nothing to do with minimum fees or lawyer advertising. While appellants' brief contains a number of conclusory statements about lawyers in general and the bar of Puerto Rico in particular, there was no evidence introduced at any of the bankruptcy hearings from which it could be reasonably found that the Puerto Rican bar had conspired to deprive Development of legal services. It is true, according to Schreibman, that a number of lawyers refused to represent Development, but that is hardly evidence of a Sherman Act violation. Based on this record, we cannot even approach peripherally the question of whether the rule against layman representation is a Per se violation of the Sherman Act. We do observe, however, that the well-publicized problem of poorly trained lawyers trying cases in the federal courts would be greatly compounded if laymen were to be allowed to represent corporations.
 
 III. THE CONSTITUTIONAL ISSUE
 
 29
 We come finally to the constitutional issue. We have found no case, and appellant cites none, for the right of representation claimed. In fact, we have been unable to find any authority for the proposition that an individual has a constitutional right to self-representation in a civil case.[4] This is not surprising in the light of 28 U.S.C. § 1654, which provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively are permitted to manage and conduct causes therein." The word "parties" has been limited to individuals in an unbroken line of cases going back to at least 1840. See cases cited in In Re Victor Publisher, Inc., supra, 545 F.2d at 286. 28 U.S.C. § 1654 originated as section 35 of the Judiciary Act of 1789 and has been part of federal law ever since. We have been unable to find any case or authority intimating that the right of an individual to represent himself in the federal courts should be extended to corporations.[5]
 
 
 30
 Ignoring history and lack of precedent, appellants argue that corporations possess the same constitutional rights as do individuals. This, it is urged, is but a logical extension of First National Bank v. Bellotti, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), and Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). This is a chimerical reading of both cases. It was the protection of free discussion of governmental affairs, not concern for the welfare of the bank, that implicated the first amendment in First National Bank v. Bellotti. Mr. Justice Powell, speaking for the majority, said:
 
 
 31
 As the Court said in Mills v. Alabama, 384 U.S. 214, 218 (86 S.Ct. 1434, 1437, 16 L.Ed.2d 484) (1966), "there is practically universal agreement that a major purpose of (the First) Amendment was to protect the free discussion of governmental affairs." If the speakers here were not corporations, no one would suggest that the State could silence their proposed speech. It is the type of speech indispensable to decision-making in a democracy, and this is no less true because the speech comes from a corporation rather than an individual. The inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual.
 
 
 32
 Id. at 776, 98 S.Ct. at 1416. Pierce held invalid a state statute forcing children to accept their educational instruction only from public school teachers. The court, almost in passing, stated:
 
 
 33
 Appellees are corporations and therefore, it is said, they cannot claim for themselves the liberty which the Fourteenth Amendment guarantees. Accepted in the proper sense, this is true. Northwestern Life Ins. Co. v. Riggs, 203 U.S. 243, 255, 27 S.Ct. 126, 51 L.Ed. 168; Western Turf Association v. Greenberg, 204 U.S. 359, 363, 27 S.Ct. 384, 51 L.Ed. 520. But they have business and property for which they claim protection. These are threatened with destruction through the unwarranted compulsion which appellants are exercising over present and prospective patrons of their schools. And this court has gone very far to protect against loss threatened by such action. Truax v. Raich, 239 U.S. 33; Truax v. Corrigan, 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254; Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255.
 
 
 34
 Pierce v. Society of Sisters, supra, 268 U.S. at 535, 45 S.Ct. at 573. This language, by any stretch of the imagination, cannot be interpreted as laying the basis for a due process constitutional right of a corporation to be represented by a layman.
 
 
 35
 It is important, as appellant argues, that all persons have the right of access to the courts. See e. g., Bounds, Correction Commissioner v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Fuentes v. Shevin and Parham v. Cotese, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Goldberg v. Kelley, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Aside from the fact that Development has made no credible showing that it was unable to obtain counsel or that its right of access to the federal courts was in any way restricted, we do not think that the cases cited apply at all to this situation. It is laboring the obvious to point out that Schreibman and his corporations have had every opportunity to litigate fully in the bankruptcy and district courts and in the court of appeals.
 
 
 36
 Corporations, despite their pervasive role in our modern society, are not human beings. Although we are prone to regard them as living entities, they are only creatures of the state subject to government regulation and control. One of the time-hallowed restrictions on corporations has been that, in court proceedings, they must be represented by a licensed attorney. There is nothing unfair, illegal or unconstitutional in this requirement.
 
 
 37
 The judgment of the district court is affirmed in all respects.
 
 
 
 [1]
 For practical purposes, both Heller corporations can be treated as one
 
 
 [2]
 (a) Stay of Actions and Lien Enforcement. A petition filed under Rule 11-6 or 11-7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter X of the Act for the purpose of the rehabilitation of the debtor or the liquidation of his estate
 
 
 [3]
 Judge Hernandez-Rodriguez ordered the affidavit of disqualification stricken on March 21, 1977
 
 
 [4]
 An individual accused of a crime has an absolute right under the sixth amendment to represent himself. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)
 
 
 [5]
 The following listed authorities do not exhaust the field, but they are comprehensive. History of the Supreme Court of the United States, Vol. 1, "Antecedents and Beginnings," Oliver Wendell Holmes Devise (1971); Frankfurter & Landis, The Business of the Supreme Court (1927); Warren, New Light on the History of the Federal Judiciary Act of 1789, 37 Harv.L.Rev. 49 (1923)