**In re WHET, INC., Debtor.**

**Bankruptcy No. 80–1542–HL.**

United States Bankruptcy Court,
D. Massachusetts.

June 2, 1983.

---

Anthony R. Martin-Trigona, pro se.

Jon D. Schneider, Goodwin, Proctor & Hoar, Boston, Mass., for trustee of WHET, Inc.

David Ferrari, trustee.

## MEMORANDUM ON STANDING OF ANTHONY R. MARTIN–TRIGONA

HAROLD LAVIEN, Bankruptcy Judge.

On May 4, 1983, the trustee filed a motion for reconsideration of the Order compelling the trustee's production of documents. The movant requests the Court to rule on the issue of whether Anthony R. Martin-Trigona ("Martin-Trigona") is a party in interest in these Chapter 11 proceedings. The Court requested memoranda on the issue by May 16, 1983. Memoranda were filed by the trustee and by certain creditors of the debtor.[1]

It is the trustee's position that Martin-Trigona is not a party in interest and that Martin-Trigona lacks standing to participate in any of the WHET, Inc. proceedings.[2]

The right to be heard in a Chapter 11 case is dealt with under 11 U.S.C. § 1109:[3]

§ 1109. Right to be heard.

(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

Martin-Trigona does not fit into any of the categories defined in § 1109(b). Martin-Trigona is not the debtor. He attempts to confuse the issue by signing and filing pleadings as "WHET, Inc./Anthony R. Martin-Trigona". The debtor in the case pending before the Court is WHET, Inc., a Massachusetts corporation. Nor is Martin-Trigona a creditor or equity security holder. Subsequent to the filing of the WHET, Inc. petition, Martin-Trigona filed an individual petition under Chapter 11. That case, presently pending in the District of Connecticut, was converted to a case under Chapter 7 on January 22, 1982. Any claims Martin-Trigona may have against the WHET, Inc. estate which arose prior to the filing of the personal bankruptcy have vested in his personal trustee in Connecticut and can be asserted only by the personal trustee.[4]

The Bankruptcy Act, both pre and post-1978, contemplates an expeditious and economical administration of the debtor's es-

1. By Order dated May 16, 1983, Martin-Trigona was given an additional 10 days to file a memorandum. It was not filed until May 31, 1983, but has been reviewed by the Court.

2. The question of Martin-Trigona's standing has been referred to by the Court as early as its Memorandum on Sale and Related Matters, *In re WHET, Inc.*, 12 B.R. 743, 746 (Bkrtcy.D. Mass.1981) and as recently as the Memorandum on Recusal dated March 21, 1983.

3. Subsection (a) deals with the rights of the Securities and Exchange Commission to intervene.

4. *In re Goodwin's Discount Furniture, Inc.*, 16 B.R. 885 (Bkrtcy. 1st Cir.1982); *Fred Reuping Leather Co. v. Fort Greene National Bank of Brooklyn*, 102 F.2d 372 (3rd Cir.1939); *See In re O.P.M. Leasing Services, Inc.*, 21 B.R. 983, 985. (D.S.D.N.Y.1981). The case *Matter of First Colonial Corporation of America*, 693 F.2d 447 (5th Cir.1982), frequently cited to the Court by Martin-Trigona on the issue of standing is not on point. There is no indication that the shareholder in that case was in bankruptcy with a trustee representing its interests in the shares.

tate[5] by the single office of the trustee.[6] In fact, the 1978 Act further emphasized its intent by broadening the definition of the bankruptcy estate to include any and all interests of the debtor, legal or equitable, in any of his property as of the commencement of his case. Even exempt property became, in the first instance, property of the estate.[7] In short, to quote the legislative history, "Once the estate is created, no interests of property of the estate remain in the debtor."[8]

In fact, the wisdom of this policy is manifestly demonstrated in this case with its volumes of files, uncounted motions and appeals, and unconscionable delay. This was a relatively simple case that started on August 15, 1980, but the bankruptcy court is still trying to conclude its portion of the case by its third anniversary. There is no end in sight for the numerous appeals and collateral attacks. All logic dictates an end to this attempt by Anthony R. Martin-Trigona to serve as surrogate trustee.

■ The only "claim" which arguably might belong to Martin-Trigona, individually, is that described in a telegram filed January 3, 1983, which states, *inter alia,* that Martin-Trigona "hereby submits a claim for priority administrative expense in the amount of $290,000, from August 1980 —December 1982 as per books and records of debtor 11 U.S.C.A. 503–507." On January 4, 1983, Martin-Trigona filed a "Memorandum in Support of Priority Claim for Payment under 11 U.S.C.A. §§ 503, 507" which stated that a consulting and management services contract[9] was entered into

between the debtor and Martin-Trigona on August 16, 1980.[9a] The WHET, Inc. case was filed on August 15, 1980. The court's docket does not reflect that approval to enter into this agreement was sought or obtained. That is a matter to be dealt with at another time. In any event, the filing of an administrative claim does not give one the status of a "creditor" with standing under § 1109. The term "creditor" is defined in the Bankruptcy Code at § 101(9). "Creditor" means:

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim;

. . . .

The purported administrative claim does not bring Martin-Trigona within (A), (B), or (C). Further, since the plan contemplates payment in full of all allowed administrative claims, he has no real or pecuniary interest.[9b]

■ Martin-Trigona claims to be the sole shareholder of WHET, Inc. As to his status as an equity security holder, those interests, as stated above, now vest in his personal Chapter 7 trustee. It should also be noted that on Schedule A–2 to the Statement of Financial Affairs, signed by Martin-Trigona under penalty of perjury, it states that 70% of the stock is pledged to Charles River Broadcasting and that 20% of

---

5. Bankruptcy Rule 903.

6. 11 U.S.C. § 704—Duties of Trustee; 11 U.S.C. § 521—Duties of Debtor to cooperate with Trustee.

7. 11 U.S.C. § 541.

8. Senate Report No. 95–989 p. 83, Cong. Record Vol. 124 (1978), U.S.Code Cong. & Admin. News, p. 5787.

9. The Memorandum states that a copy of the contract is attached as Exhibit A. However, no exhibit was attached.

9a. Martin-Trigona's individual bankruptcy case was filed in December, 1980 so that again any

contractual rights would belong to his estate, administered by his individual trustee for at best this would be a contract claim for largely unperformed services as Mr. Martin-Trigona was in prison during all of the relevant period.

9b. Martin-Trigona might not even have standing if the trustee contests the administrative claim. See Footnote 9a. If he did have standing, it would be limited to protecting his portion of the administrative claim which would not include or be affected by the determination of claims of lower priority.

the stock is pledged to National Bank of North America.

The only potential exception is the residual interest of a solvent debtor. The disclosure statement in this liquidating plan (the station has long since been sold so that the available assets are known and liquid) indicates that even with the large amount of disputed claims, there would be something less than a 100% dividend, probably in the 40%–60% range, and nothing left for stockholders.

While the Connecticut trustees do not report to this Court, their constant disputes with Mr. Martin-Trigona would not seem to indicate a solvent personal estate. *Kapp v. Naturelle, Inc.,* 611 F.2d 703 (8th Cir.1979). In any event, no proof of potential solvency in Martin-Trigona's individual bankruptcy estate has been presented to this Court. In fact, it would appear from one of the briefs submitted in support of the trustee's objection to Martin-Trigona's standing that in the Connecticut radio station case, Judge Shiff was affirmed by the District Court in determining that Anthony R. Martin-Trigona was not the debtor nor its alter ego and could not appear for or act as attorney for the debtor. *See In re New Haven Radio, Inc.* Civil No. 5–82–152 (Burns, U.S.D.J., decided 10/22/82).

Martin-Trigona, because he is not a licensed attorney,[10] is not entitled to represent the debtor corporation's interest in the Chapter 11 proceedings.[11] The case law is clear in this circuit, and is set forth in *In re Las Colinas Development Corp.,* 585 F.2d 7 (1st Cir.1978). The central issue in that case was "Does the nonlawyer president and majority stockholder (94%) of a corporation have a right to represent the corporation in all stages of a Chapter XI bankruptcy proceeding?" *Id.* at 8. The court held that in a Chapter XI proceeding, a nonlawyer could not represent a corporation

and adopted the reasoning in *In re Victor Publishers, Inc.,* 545 F.2d 285 (1st Cir.1976):

This rule that a corporation may be represented only by licensed counsel is based not just on a tradition that goes back to the common law, *Brandstein v. White Lamps, Inc.,* 20 F.Supp. 369 (S.D.N.Y. 1937), but also on the practical consideration that "[s]ince a corporation can appear only through its agents, they must be acceptable to the court; attorneys at law, who have been admitted to practice, are officers of the court and subject to its control." *Id.* at 286.

As to an exception to this rule, noted by way of a footnote in the *Victor Publishers* case,[12] for "laymen with extraordinary legal ability", the *Las Colinas* court stated "the precedential effect of the footnote was *severely eroded* by our order of January 20, 1977." (emphasis added). That order stated that "[t]he fact that this court has on occasion departed from its normal practice and allowed the petitioner to be represented by its president, who is not a lawyer, does not mean that any other court is required to make a similar exception on another occasion." *In re Las Colinas Development Corporation,* No. 76–1538 (January 20, 1977), *quoted in In re Las Colinas Development Corp., supra,* 585 F.2d 7, 9.

An exception to the rule prohibiting nonlawyer representation was described in *Matter of Holliday's Tax Services, Inc.,* 417 F.Supp. 182 (E.D.N.Y.1976). The exception may be applied to the small, closely-held corporation upon a "showing of good faith". *Id.* at 185. The *Holliday's* exception is not applicable here for two reasons. First, *Holliday's* was talking about businesses valued at less than $100,000. *Id.* Secondly, there is no doubt that Martin-Trigona's representation of the corporation would "caus[e] a substantial threat of disruption." *Id.* His participation in the case to date has been

---

**10.** Martin-Trigona is a law school graduate who passed the Illinois bar but was denied admission. *See In re Anthony R. Martin-Trigona,* 55 Ill.2d 301, 302 N.E.2d 68 (1973).

**11.** Martin-Trigona's ineligibility to represent the debtor has been previously brought to his

attention. See Footnote 2 of the Procedural Order dated January 10, 1983. (This order was affirmed by Judge Tauro on May 13, 1983).

**12.** *In re Victor Publishers, Inc.,* 545 F.2d 285, 286 (1st Cir.1976).

marked by scandalous and abusive language in pleadings and in the courtroom, repetitious motions, appeals, and personal lawsuits against the Court and various parties in interest.[13] "Obstinate persistence in an undeviating course of conduct" is not the showing of good faith required by *Holliday's*. *In re Las Colinas Development Corp.*, supra, 585 F.2d 7, 11.

■ Martin-Trigona has repeatedly stressed that he is the chief executive officer and president of the debtor and therefore speaks for the debtor. WHET, Inc. and the debtor in possession are separate entities. The Chapter 11 trustee speaks for the debtor in possession. Assuming, for the sake of argument only, that Martin-Trigona is the chief executive officer and president of WHET, Inc., his status as an officer of the debtor does not create a basis for standing. The issue of whether officers of a corporation have standing was addressed in *In re O.P.M. Leasing Services, Inc.*, 21 B.R. 983 (D.S.D.N.Y.1981). There, Mordecai Weissman, the former president of the Chapter 11 debtor (and 50% owner of the company which was the sole shareholder of the debtor), argued that he was a party in interest under § 1109(b) and therefore entitled to appear and be heard on any issue in the case. The court took the position that

Weissman's former position as an officer of O.P.M. does not create any inherent

rights in this matter. In major bankruptcies, there are often hundreds of former officers of insolvent corporations, and there is no authority for the proposition that their former employment bestows any rights per se in the corporation's bankruptcy proceedings.

The fact that Martin-Trigona may be a present officer, as opposed to a former officer, does not alter the result. The claims arising from his employee status are claims to be asserted by the trustee in his personal bankruptcy. If Martin-Trigona is arguing that he has standing by virtue of the fact that as president of the corporation he is its agent, the rule in *Las Colinas* would apply: The interests of a corporation in a Chapter 11 proceeding can only be represented by a licensed attorney and not by a nonlawyer officer who is not subject to the canons and control that the Court could exercise on an officer of the court.[14]

As for any arguments Martin-Trigona might make that the Connecticut bankruptcy proceeding is invalid or that the trustee in his Chapter 7 case is not adequately protecting his interests, these are matters that can only be addressed in Connecticut; however, note the last sentence of the concurring opinion in the case of *Martin-Trigona v. Shiff*, supra, at page 389:

There has been enough obstruction and delay in this matter. If the bankruptcy

---

13. In an appeal of his contempt problems in his individual bankruptcy and another radio station in Connecticut, the 2nd Circuit has recently referred to Mr. Anthony R. Martin-Trigona as follows:

BACKGROUND

Anthony Martin-Trigona is no stranger to the federal courts. His tour through the court system is marked by a persistent refusal to cooperate with court orders and purposeful efforts to delay and jaundice court proceedings. His distinctive brand of *pro se* advocacy has reached this Court after a barrage of procedural and jurisdictional challenges which have frustrated the courts below and have caused these bankruptcy proceedings to advance at a snail's pace, with little progress made toward settling creditors' claims during the past two and one-half years.[1] (See opinion for the Court's relevant footnote). *Martin-Trigona v. Shiff*, 702 F.2d 380 (2 Cir.1983).

14. For example, see the salacious argument submitted by Martin-Trigona in his "Motion for Reconsideration", filed June 1, 1983:

"It is obvious that the debtor and its owner are freedom fighters in a world war against evil, demonic influences which travel under the banner of world racist Zionism. It is equally obvious that the Court is a part of this demonic plague, and is acting to loot and steal the debtor's property in order to send the money thus stolen to Zionist storm troopers in Lebanon to commit genocide against the Arab nation. It is beyond peradventure that this "court" is not a court at all, but an outpost of zionist atrocities and genocide, and is being manipulated unlawfully to deprive the debtor and its owners of due process of law in the service of the interests of a foreign nation (the Zionist entity)."

court cannot incarcerate for contempt, the district court can.